**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DELIO LOPEZ-LOPEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9308** |
| **NORVEL ORAZIO, ET AL.** | **SECTION "T"(4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) (Rec. Doc. No. 12)** filed by the defendants, Lieutenant Norvel Orazio and St. Charles Parish Greg Champagne, seeking dismissal of plaintiff Delio Lopez-Lopez's complaint for failure to exhaust administrative remedies and failure to state a claim for which relief can be granted. Lopez-Lopez has opposed the motion (Rec. Doc. No. 20).

The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.    Factual and Procedural Background

At the time of the underlying incidents, Lopez-Lopez was a federal inmate awaiting sentencing on his federal conviction while housed in the Nelson Coleman Correctional Center in St. Charles Parish ("NCCC").[1] Although Lopez-Lopez is now proceeding *pro se*, his complaint under 42 U.S.C. § 1983 and state tort law theories of *respondeat superior* and negligence under

---

[1]Rec. Doc. No. 1.

La. Civ. Code art. 2315 was filed through counsel and urged against the defendants, Lieutenant Orazio in his individual capacity and Sheriff Champagne in his official capacity.[2]

In his complaint, Lopez-Lopez alleges that, in early April 2018, he was housed in NCCC after having been convicted on unspecified federal charges and awaiting his sentencing. He was housed with other inmates, including federal pretrial detainees Armstead Kieffer and Lance Stovall. Lopez-Lopez had a conversation with Kieffer in which Kieffer inculpated himself in the armed robbery of an armored car and shooting death of a security guard for which he was awaiting trial. Sometime after this, inmates associated with Kieffer, including Stovall, began calling Lopez-Lopez "a rat" and denied him access to the telephones on the tier. Lopez-Lopez alleges that he began to fear for his safety and requested to see classifications officers in the NCCC Records Department to be placed in protective custody.

Lopez-Lopez alleges that he received no response to that request. In turn, he sent a request to speak with Lieutenant Orazio, who he alleges was in charge of the NCCC Special Investigations Unit responsible for addressing violence and potential violence in the jail. He claims that, because of Sheriff Champagne's unsecure communications policy at the jail, he did not include details of his situation in either request.

Plaintiff claims that Sheriff Champagne's policy created a system in the jail that did not provide security and/or confidentiality in communications between inmates and the jail staff. He claims that responses to inmates' written correspondence to staff were not delivered directly to the complaining inmate. Instead, at 8:00 a.m. daily, the tier deputy would place all of the unsealed responses on the table in the day room where they could be read by any inmate if not immediately

---

[2]The Court finds nothing in the complaint to suggest that Lieutenant Orazio was sued outside of his individual capacity. The counsel-filed complaint is not to be broadly construed.

picked up. Because of this, Lopez-Lopez did not include details of his concerns in his requests to the Records Department or Lieutenant Orazio.

Lopez-Lopez further alleges that he received no response to requests to speak with Orazio. He claims that, one day during medication distribution, he handed a deputy a note addressed to Lieutenant Orazio indicating he had information to provide. His request was granted and Lopez-Lopez spoke directly with Orazio and asked to be moved to protective custody because he feared for his safety. Plaintiff clams that he described for Orazio the activities of the other inmates and the implicit threats he was receiving from specific inmates including Stovall. Plaintiff claims that rather than move him, Lieutenant Orazio asked Lopez-Lopez to act as his informant on the tier, seeking information about gang activity and drug dealing.

Plaintiff alleges that after this conversation, on April 11, 2018 at around 2:30 p.m., he was standing in the doorway of cell D4-708 as he spoke to another inmate. He claims that, suddenly and without provocation, Stovall punched him twice in the back of the head. After a struggle, Lopez-Lopez was able to get to his cell and call for help via the intercom system. As a result of the attack by Stovall, Lopez-Lopez had severe damage to his right eye that left him permanently blind in that eye and with permanent facial disfigurement.

Lopez-Lopez argues that the attack and his injuries resulted from Lieutenant Orazio's and Sheriff Champagne's violations of his 8th and 14th Amendment protections against cruel and unusual punishment where Orazio acted with deliberate indifference to a serious risk of harm and that Sheriff Champagne, in his official capacity, operated the jail with a policy, practice or custom that did not allow inmates to securely communicate safety concerns to jail officials for fear that their written complaints would be accessible to other inmates and increase their danger. He also asserts that Orazio's actions also amounted to negligence under La. Civ. Code art. 2315 and Sheriff

Champagne is liable under Louisiana law under a theory of *respondeat superior*. Lopez-Lopez seeks monetary compensation for his damages.

## II.    <u>Defendants' Motion to Dismiss</u>

In support of the motion, defendants Lieutenant Orazio and Sheriff Champagne assert that Lopez-Lopez's complaint should be dismissed under 42 U.S.C. § 1997e(a) because plaintiff failed to aver or establish that he exhausted administrative remedies at the prison before filing his complaint.[3]  The defendants also argue that Lopez-Lopez failed to state a claim against Sheriff Champagne in his official capacity because the complaint does not specify a Sheriff's office policy that violated his constitutional rights.  In addition, they argue, plaintiff's complaint fails to allege facts establishing that he actually was threatened by any inmates, acted as an informant, or any constitutional violation by Lieutenant Orazio or a claim sufficient to overcome Lieutenant Orazio's qualified immunity.  Finally, the defendants argue that plaintiff has failed to state particularized facts to support his state law claims.

In his *pro se* opposition memorandum, Lopez-Lopez repeats the facts alleged in his complaint and argues that he has stated a plausible claim that Sheriff Champagne maintained an unconstitutional communication policy that failed to provide privacy for inmates' written communication with the staff.[4]  He also argues that the facts state a plausible claim that Lieutenant Orazio was deliberately indifferent and failed to provide him protection from a known risk of harm when he failed to move him to protective custody and had him act as an informant.

---

[3]Rec. Doc. No. 12.

[4]Rec. Doc. No. 20.

III.    **Standards of Review**

A.    **Motions Under Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief may be granted.  To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Guidry*, 512 F.3d at 180 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

Although plaintiff's complaint was not filed *pro se*, he is a prisoner and now defending his counsel-filed complaint without assistance. In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976), the Court explained that before dismissing the complaint of a prisoner, "[a]n opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light." *Id*. at 713-14. Because of this, before dismissing a prisoner complaint, a district court ordinarily should give the *pro se* litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

### B.    Qualified Immunity

The doctrine of qualified immunity affords protection to officials against individual liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they were alleged to have violated." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

Federal courts have traditionally used a two-part inquiry to determine whether the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Freeman*

*v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004).  First, the court must consider whether "the facts alleged, taken in the light most favorable to the plaintiff, establish that the officers' conduct violated a constitutional right."  *Id*.  Second, if a constitutional right was violated, the court must decide whether the right was "clearly established" at the time of the violation.  *Id*. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  *Hope*, 536 U.S. at 739 (quoting *Anderson*, 483 U.S. at 640) (internal citations omitted).

"[A] state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2004).  A plaintiff must allege that the officer's actions were objectively unreasonable within that legal context.  *See Saucier*, 533 U.S. at 201; *Hare v City of Corinth, Ms.*, 135 F.3d 320, 328 (5th Cir. 1998) ("*Hare II*"). The Supreme Court has held that the rigid structure of *Saucier* is no longer required and that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon*, 305 F.3d at 323 (citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)).  "The plaintiff bears the burden of

negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Wicks v. Miss. State Emplt. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995) (plaintiff must "allege facts specifically focusing on the conduct of [the officer] which caused his injury"); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). Thus, to negate the qualified immunity defense, a plaintiff is required to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015) (internal quotation marks and citation omitted). In a qualified immunity determination, the facts are construed in the light most favorable to the plaintiff. *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Saucier*, 533 U.S. at 201).

## IV.    Analysis

### A.    Failure to Exhaust

In the motion to dismiss, Sheriff Champagne and Lieutenant Orazio argue that the claims against them should be dismissed because plaintiff failed to exhaust his administrative remedies at the prison before filing this suit. The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court has held that the exhaustion requirement is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 & 532 (2002). The Supreme Court further held that

"an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

In keeping with this, the United States Fifth Circuit Court of Appeals has resolved that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth*." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). The Fifth Circuit also emphatically held that the exhaustion requirement cannot be excused by a federal court, stating:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. ... District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (footnote omitted).

Despite the foregoing, it is also clear that exhaustion is an affirmative defense on which the defendants bear the burden of proof. *See, e.g.*, *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted."); *Morgan v. Tex. Dep't of Crim. Just., McConnell Unit*, 537 F. App'x 502, 508 (5th Cir. 2013); *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Of course, "it is easy work to establish that dismissal is appropriate pursuant § 1997e(a) in the context of a properly supported motion for summary judgment under Rule 56 . . ." *Coleman v. Terrebonne Parish Crim. Just. Complex*, No. 13-4325, 2013 WL 6004051, at *2 (E.D. La. Nov. 13, 2013). Here, however, the defendants did not file a motion for summary judgment.

Instead, they opted to assert the defense in a Rule 12(b) motion.  Although the defense may be asserted in such motions, it is difficult to prevail since the Court is generally limited to review of the complaint under Federal Rule of Civil Procedure 12(b).  For an exhaustion argument to succeed in this context, a plaintiff must generally concede in his complaint that administrative remedies were in fact available and that he simply did not utilize them.  *See Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (dismissal for failure to state a claim predicated on a failure to exhaust is appropriate "if the complaint itself makes clear that the prisoner failed to exhaust.").

In this case, Lopez-Lopez makes no such concession in this complaint.  Here, there is no information whatsoever before the Court regarding the specifics of the applicable grievance process, such as the steps involved in the process and the procedure for internal review.  The defendants also provide no such description in their motion urging this affirmative defense.  The Court cannot recommend dismissal on exhaustion grounds based on the pleadings before it. Should the defendants seeks to avail themselves of the exhaustion defense, it should be presented in a properly supported motion for summary judgment.  Defendants' Motion to Dismiss should be denied as to this argument.

### B.    Claims Against Sheriff Champagne in His Official Capacity

Lopez-Lopez named Sheriff Champagne in his official capacity asserting that the Sheriff's communications policy at the jail created a system that did not provide security and/or confidentiality in communications between inmates and the jail staff.  He claims that otherwise confidential correspondence is placed on a table where any inmate can read the complaints and responses between inmates and staff.  This, he claims, discouraged him from including the details of his fear in his letters to the records room and Lieutenant Orazio.  The defendants assert in their motion that this is insufficient to establish official liability under § 1983.

As asserted in the motion, plaintiff's claim against Sheriff Champagne in his official capacity is a claim for municipal liability against St. Charles Parish. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). To state a claim of municipal liability, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978).

Under the first prong, the policy may be a persistent, widespread practice even if not officially authorized or adopted and promulgated policy or a custom that fairly represents municipal policy. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). Under the second prong, the policymaker must have "final authority to establish municipal policy with respect to the action ordered," which is a question of state and local law. *Valle*, 613 F.3d at 542 (citation omitted). Under the third prong, a municipality is liable for a civil rights violation only if execution of the policy or custom causes the constitutional violation. *Monell*, 436 U.S. at 694; *see also Daniel v. City of Minden*, No. 12cv2171, 2015 WL 9684959, *2 (W.D. La. Nov. 17, 2015), *adopted*, 2016 WL 112666, at *1 (W.D. La. Jan. 8, 2016) ("A municipality such as Minden may be liable under Section 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation.").

The third step "moving force" component of *Monell* liability is critical. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (municipal liability can be found "only where [city's] policies are the moving force [behind] the constitutional violation" (internal quotations omitted)). The "moving force" element requires plaintiff to show "that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan*

*Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original) (citing *Monell*, 436 U.S. at 694). "'[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Harris*, 489 U.S. at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986)).

Because Lopez-Lopez does not contend that St. Charles Parish (or Sheriff Champagne) directly violated his constitutional rights or caused his injuries, the "moving force" analysis requires that "rigorous standards of culpability and causation . . . be applied to ensure that the municipality is not held liable solely for the actions of its employee[s]." *Brown*, 520 U.S. at 405; *see also Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (holding that moving force inquiry requires showing of causation and culpability). As to causation, "a plaintiff must show a 'direct causal connection . . . between the policy and the alleged constitutional deprivation.'" *Mason*, 806 F.3d at 280 (quoting *Fraire*, 957 F.2d at 1281). "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Id*. As to culpability, the applicable standard in this context is deliberate indifference, or a showing that the Parish through Sheriff Champagne "promulgated the policy with 'deliberate indifference' to the known or obvious consequences that a constitutional violation would result." *Id*. (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (2001)). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410). "Heightened negligence is insufficient to satisfy this standard." *Mason*, 806 F.3d at 280.

As alleged by Lopez-Lopez, the Sheriff's policy at issue is the practice of prison guards to place prison officials' written responses to inmates' requests on a table where any inmate can read

the responses if they are not immediately picked up by the intended inmate/recipient. A plaintiff, however, does not *per se* have a constitutionally protected liberty interest in a confidential grievance process. *See Robinson v. Luker*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (prison's violation of its grievance process confidentiality rules is not unconstitutional unless the inmate can show that it was an atypical and significant hardship in relation to the ordinary incidents of prison life).

Lopez-Lopez's complaint does not allege any basis to establish that the Sheriff's policy violated a specific constitutional right or that it was the driving force behind his injury, the attack by Stovall or Lieutenant Orazio's actions. Lopez-Lopez does not allege that the guards were aware of the contents of his complaints or that guards placed the responses on the table intending for other inmates to read them. Lopez-Lopez also does not allege that anyone, inmate or guard, actually read his complaints. Even more compelling, Lopez-Lopez made clear in the complaint that his written requests to staff contained no details of any threats or his alleged fears, and he received <u>no</u> responses from prison officials. In other words, there was nothing compromising written by him or addressed to him that could have been left on the table for others to read.

Instead, Lopez-Lopez simply complains that, as a result of this practice, he chose not to include the details or reasons for his transfer request in his written documents sent to the records unit and Lieutenant Orazio. This contention does not state or plausibly allege that the complained of policy was the "moving force" behind Lopez-Lopez's injury or that the policy was promulgated with deliberate indifference to a known danger or obvious consequence that a constitutional violation would result. *See Henderson v. Anderson*, 463 F. App'x 247, 250 (5th Cir. 2012) (quoting *Spiller v. Tex. City Pol. Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) ("The description of a

policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

For these reasons, Lopez-Lopez has failed to state a claim under *Monell* against Sheriff Champagne in his official capacity. The defendants' Motion to Dismiss should be granted as to the claims against Sheriff Champagne in his official capacity.

### C.    Claims Against Lieutenant Orazio in His Individual Capacity[5]

Lopez-Lopez asserts claims against Lieutenant Orazio individually for failure to protect him from known danger of attack by other inmates. Lopez-Lopez claims that, in early April 2018, he spoke with Lieutenant Orazio and told him that, after Kieffer apparently regretted making inculpatory statements to Lopez-Lopez about his pending federal criminal charges, other inmates close to Kieffer, including Stovall, began to threaten and exclude Lopez-Lopez and call him "rat," which caused Lopez-Lopez to fear for his safety. According to the complaint, rather than grant Lopez-Lopez's request to be moved to protective custody, Lieutenant Orazio had Lopez-Lopez return to the tier and act as an informant regarding gang and drug activity. On April 11, 2018, Stovall attacked Lopez-Lopez from behind causing him permanent injury, deformity and blindness.

In the pending motion, the defendants assert that Lopez-Lopez failed to allege sufficient factual detail about the alleged threats by other inmates by giving the "who, what, when, or why" of the threats from other inmates such that "[t]here is nothing before the Court to determine

---

[5]The complaint is clear that Sheriff Champagne is sued only in his official capacity. Out of an abundance of caution, the defendants contend that, to the extent if any Lieutenant Orazio is named in his official capacity, the claim is repetitive of that asserted against Sheriff Champagne and fails for the same reasons. Although the Court finds that Lieutenant Orazio was named only in an individual capacity, the Court agrees that any official capacity claim against Orazio would be dismissed under *Monell* because Lopez-Lopez failed to allege the existence of a policy, custom, or practice of failing to protect inmates in plaintiff's position or making endangered inmates act as informants.

whether there was any risk to plaintiff at all."[6]  They also argue that Lopez-Lopez "fails to establish that he actually did in fact serve as an informant or whether he provided any information at all to Orazio."[7]  In addition, the defendants argue that, because Lopez-Lopez has not stated a claim that Orazio violated his Eighth or Fourteenth Amendment rights, Orazio is entitled to qualified immunity.

#### a.    Eighth Amendment Standards

At the time of the events alleged, Lopez-Lopez had been convicted on federal criminal charges and was awaiting sentence.  He therefore enjoys the Eighth Amendment protections afforded to a convicted and sentenced inmate rather than the 14th Amendment due process protections of a pretrial detainee. *Accord Tilmon v. Prator*, 368 F.3d 521 (5th Cir. 2004). Nevertheless, the United States Fifth Circuit has made clear "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement."  *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996) ("*Hare I*").  Thus, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to harm by a prison guard or another inmate, such as occurred in this case.  *Kitchen v. Dallas Cty.*, 759 F.3d 468, 477, 480 (5th Cir. 2014); *Hamilton v. Lyons*, 74 F.3d 99, 104 n.3 (5th Cir. 1996); *Hare I*, 74 F.3d at 650.

#### b.    Failure to Protect

---

[6] Rec. Doc. No. 12-1, p. 5.

[7] *Id.*

As an initial matter, although glossed over in the motion, it prevails upon the Court to recognize that, to the extent Lopez-Lopez may assert that he had a right to be housed in protective custody or any particular custodial classification, based solely on his request, he is clearly wrong. *See*, *e.g.*, *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Doss v. Calfee*, No. 07cv53, 2008 WL 112109, at *6 (E.D. Tex. Jan. 9, 2008); *see also Mozee v. Crowley*, 188 F. App'x 241, 242 (5th Cir. 2006).  Rather, as the United States Fifth Circuit has explained:

> Classification of prisoners is a matter left to the discretion of prison officials. *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983).  As pointed out in *Wilkerson*, "[i]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *Wilkerson*, 703 F.2d at 911, citing *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979).  Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification. *Id*.  Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

*McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).  Lopez-Lopez cannot state a claim for relief against Lieutenant Orazio for merely declining a request to be moved without something more.

In this case, however, the something more is Lopez-Lopez's well-settled constitutional right to be protected from violence at the hands of another inmate.  *See Leal v. Wiles*, 734 F. App'x 905, 909 (5th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)) (discussing the prison officials' duty to protect inmates and detainees); *Hare I*, 74 F.3d at 650.  The United States Fifth Circuit has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Neals*, 59 F.3d at 533 (citations and internal quotation marks omitted); *see Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006).  Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question . . .." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998); *accord Dangerfield v. Dyson*, No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008) (Order adopting Report and Recommendation).

Mindful of the Rule 12(b)(6) standards, the Court finds that Lopez-Lopez has stated sufficient facts, including the "who, what, when and why" disregarded by defendants' motion, against Lieutenant Orazio to survive dismissal at this time.  Lopez-Lopez alleges that in early April 2018, he reported in person to Orazio that he was being threatened by and feared other inmates on his tier, including Stovall, the ultimate attacker.  He claims that he specifically told Orazio that he was excluded from access to the telephone and called "rat" by inmates sympathetic to or aligned with Kieffer.  He claims that, despite his report, Orazio declined to move him off of the tier and instead sent him back to act as an informant about gang and drug activity amongst the same inmates.  He further alleges that, shortly thereafter, he was attacked by Stovall resulting in his permanent blindness and disfigurement.  Accepting these assertions as true, Lopez-Lopez has alleged the first requirement for a plausible failure-to-protect claim.  That is, Orazio allowed Lopez-Lopez to be housed in conditions that posed a substantial risk of serious harm.  *See Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019) ("[The plaintiff] sustained a serious head wound[, s]o his injury meets the first requirement of the *Farmer* standard.").

As to the second requirement, the Fifth Circuit has stated that where one inmate is "a known enemy of the other," it evinces subjective deliberate indifference for an officer to house the two together.  *See Branch v. Jacobs*, 334 F. App'x 648, 649 (5th Cir. 2009); *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (where, after a fight, prison officials returned plaintiff and the other

17

inmate to the same tier and a second fight occurred, plaintiff stated sufficient facts to support a plausible claim of deliberate indifference to a serious risk of harm). However, defendants argue in their motion that Lopez-Lopez has alleged only vague and non-descript threats in his complaint, which they contend is insufficient to show indifference or a need for Orazio to have taken a different action (although he denies that he made Lopez-Lopez an informant).

It is true that "[a] prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Williams v. Management & Training Corp.*, No. 16-37, 2017 WL 8793429, at *3 (S.D. Miss. Nov. 2, 2017) (citing *Coleman v. Tanner*, No. 09-7346, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010), *adopted by* 2010 WL 2009081, at *1 (E.D. La. May 19, 2010)). Here, however, defendants are remiss at the pleading stage to minimize the complexity of the threats and fear alleged in the complaint and conveyed by Lopez-Lopez to Lieutenant Orazio. As the *Farmer* court explained: "Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. Defendants' assertion that plaintiff's complaint fails to provide enough detail of the exact threat and risk posed is unavailing at this stage.

In the complaint, plaintiff alleges that he voiced to Orazio his fears and concerns about threats from and exclusion by inmates including Stovall, who were in Kieffer's circle. Despite this knowledge, Orazio allegedly sent plaintiff back into danger as an informant. To have done so, as alleged, Lieutenant Orazio either believed what Lopez-Lopez told him about the unsavory activities on the tier or Lieutenant Orazio already knew about gang violence and drug activity on

the tier.  Either way, accepting the allegations as true, there is sufficient factual allegation in the complaint to indicate that Orazio knew of a danger or the facts from which a risk could be inferred, and drew that inference when he instructed Lopez-Lopez to gather more information about gang and drug activity on the tier as a confidential informant.

The plaintiff's complaint states a plausible claim of failure to protect through Orazio's intentional indifference to a risk of potential and serious harm.  This is sufficient to survive the defendants' motion to dismiss.

### c.    Qualified Immunity

As outlined in detail previously, qualified immunity entails a two step analysis.  *Saucier*, 533 U.S. at 201.  First, the court must consider whether "the facts alleged show the officer's conduct violated a constitutional right."  *Id*.  Second, if a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation.  *Id*.

These same pleaded facts addressed above overcome both prongs of the qualified immunity defense.  *Hinojosa*, 807 F.3d at 664.  As the Court has concluded, Lopez-Lopez stated a plausible claim of failure to protect by Lieutenant Orazio which overcomes the first prong of the qualified immunity analysis.

As to the second prong, the law on prison officials' duty to protect inmates from violence at the hands of other inmates is a well-established tenant.  *Longoria*, 473 F.3d at 592; *Farmer*, 511 U.S. at 832-33; *Hare I*, 74 F.3d at 639.  The bounds of that law are such that a reasonable prison officials would know it to be violated by placing an endangered inmate into a cell with those reported to be posing the threat for the inmate.  *See Rodriguez v. Lozano*, 108 F. App'x 823, 828 (5th Cir. 2004) (even circumstantial evidence may establish that the risk was obvious and the official must have known of the risk to the inmate).  Here, Lieutenant Orazio is alleged to have

returned Lopez-Lopez to the tier with his antagonists to obtain confidential information about criminal and gang activity by those same inmates.  To have done so, Orazio's actions as alleged were objectively <u>un</u>reasonable. *See Dennis v. Crites*, No. 12-129, 2013 WL 1681446, at * (S.D. Tex. Apr. 16, 2013) (denying summary judgment on qualified immunity finding it unreasonable for prison officials to have failed to protect inmate from reported threats of gang violence); *see also Jarvis v. Watson*, No. 17-210, 2019 WL 3436885, at *1 (S.D. Miss. Jul. 19, 2019), *adopted by* 2019 WL 343077, at *1 (S.D. Miss. Jul. 30, 2019) (denying summary judgment on qualified immunity where inmate requested transfer and reported names of threatening inmates and prison took no action); *Thomas v. Grimes*, No. 18077, 2019 WL 542978, at *1 (M.D. La. Feb. 11, 2019) (it was unreasonable for prison officials to house plaintiff with a known predator).  As the United States Fifth Circuit has noted, Supreme Court law is clear that it simply is not reasonable or acceptable for a prison official to take no action but to send a threatened inmate back to his cell. *Johnson v. Johnson*, 385 F.3d 503, 527 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33).

Lopez-Lopez has stated facts sufficient to overcome the both prongs of the qualified immunity defense.  *Accord Hare II*, 135 F.3d at 327 (even if the conduct violates a constitutional right, qualified immunity applies if the conduct was objectively reasonable.).  Therefore, Lieutenant Orazio is <u>not</u> entitled to qualified immunity and the motion to dismiss must be denied as to the failure to protect claim against him.

### D.    <u>State Law Claims</u>

Lopez-Lopez asserts in his complaint that the actions of the defendants also constitute negligence La. Civ. Code art. 2315 and the actions of Sheriff's Champagne is responsible for the

acts of his employees, "including but not limited to defendant Orazio," under the theory of *respondeat superior* under Louisiana law.[8]

In the motion to dismiss, the defendants argue that these "catch all" statements are insufficient to state a claim for purposes of *Iqbal* because Lopez-Lopez failed to specify which of the previously pleaded facts in the complaint relate specifically to the theories of negligence and *respondeat superior*. Defendants offer no other basis for dismissal of the state law claims and do not reference or analyze the fundamental requirements of either claim under Louisiana law. As concluded above, the complaint contains sufficient statements of facts to provide plausibility to plaintiff's claims even as to these parallel state theories of law. *See Stringfellow v. City of Ruston*, No. 16-0756, 2017 WL 3202830, at *22 (W.D. La. Jul. 26. 2017) (resolutions reached under § 1983 analysis apply to parallel Louisiana law claims under Art. 2315).

The foundation for Louisiana tort law is found in La. Civ. Code art. 2315, which provides as follows: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under this article, a person may recover damages for injuries caused by a wrongful act of another. *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003). Louisiana law embraces a broad civilian concept of "fault" that encompasses liability based on negligence or intentional misconduct. *Id.*

Louisiana courts utilize a duty-risk analysis to evaluate tort liability under the facts of the case. *State ex rel. Jackson v. Phelps*, 672 So.2d 665, 666-67 (La. 1996). "Under this analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and

---

[8] Lopez-Lopez's reliance on and reference to Texas state law in his opposition memorandum is irrelevant.

the risk of harm was within the scope of protection afforded by the duty breached." *Id.* (citation omitted); *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627 (La. 2006).

Specific to prison officials, "[t]he majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm." *Parker v. State*, 282 So.2d 483, 487 (La. 1973); *see also State ex rel. Jackson*, 672 So.2d at 665; *Breaux v. State*, 326 So.2d 481, 482 (La. 1976); *Harrison v. Natchitoches Parish Sheriff's Dept.*, 896 So.2d 101, 103 (La. App. 3d Cir. 2004) (applying *Parker* and *Jackson* standards to inmate-on-inmate attack in parish jail).

As discussed previously, the facts alleged by Lopez-Lopez assert that he told Lieutenant Orazio about his fears and the hostile actions by inmates, including Stovall, and despite alleged or apparent gang and drug violence on the tier, Lieutenant Orazio returned plaintiff into danger as an informant. Accepting the allegations as true for purposes of the motion to dismiss, there is sufficient factual allegation in the complaint to indicate that Orazio knew of or had reason to anticipate harm to Lopez-Lopez and failed to take any measure, much less reasonable measures, to prevent harm to Lopez-Lopez. This is sufficient to state a plausible claim under La. Civ. Code art. 2315.

Louisiana law also recognizes that municipalities, like St. Charles Parish via Sheriff Champagne in his official capacity, do not enjoy special protection from vicarious liability and are subject to *respondeat superior* liability like every other employer. *Deville v. Marcantel*, 567 F.3d 156, 173-74 (2009). This principle of vicarious liability is codified in La. Civ. Code art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. The "course of" employment

refers to the time and place of the employee's actions, while the "scope of" employment refers to the employee's engagement in the functions for which employed. *Mitchell v. City of New Orleans*, No. 06-4021, 2016 WL 3127168, at *7 (E.D. La. Jun. 3, 2016) (citing *Russell v. Noullet*, 721 So.2d 868, 871 (La. 1998)). Generally, an employee's conduct is within the course and scope of his employment if "the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 639 So. 2d 224, 226-27 (La. 1994); *Richard v. Hall*, 874 So. 2d 131, 138 (La. 2004); *Nagle v. Gusman*, 61 F. Supp.3d 609, 626 (E.D. La. 2014) (citing *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974)). For intentional tort cases, the court must determine "whether the tortious act itself was within the scope of the servant's employment." *Ermert v. Hartford Ins., Co.*, 559 So.2d 467, 478 (La. 1990). However, "the fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment." *Price v. La. Dep't of Transp. & Dev.*, 608 So.2d 203, 210 (La. App. 4th Cir. 1992). In either case, negligent or intentional, "[t]he scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Richard*, 874 So.2d at 138.

Here, Lopez-Lopez's complaint asserts facts showing that Orazio, in his role as security head in the prison, made the decision not to move Lopez-Lopez to secured detention and instead returned him to the same tier with the same inmates to inform on gang and drug activity, which led to his injury at the hands of inmate Stovall. The complaint alleges that these actions took place at the prison while Lieutenant Orazio was acting in his role as a prison or Sheriff's office employee. These facts are sufficient to state a plausible claim of *respondeat superior* liability against Sheriff Champagne in his official capacity.

23

Furthermore, "Louisiana applies qualified immunity principles . . . based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (citing *Moresi v. Dep't of Wildlife and Fisheries*, 567 So.2d 1081, 1093 (La. 1990)). Orazio has not pled or discussed a state law qualified immunity defense in the motion. Nevertheless, Lopez-Lopez's state law claims derive from and parallel his § 1983 allegations. Therefore, any assertion of a state law qualified immunity defense by Orazio would fail at this time for the same reasons discussed and resolved by the Court in addressing Orazio's federal qualified immunity defense. *See Stringfellow*, 2017 WL 3202830, at *22. The complaint asserts sufficient factual claims to overcome a qualified immunity defense at this time.

For the foregoing reasons, the defendants'' motion to dismiss should be denied as to the state law claims urged against Lieutenant Orazio and Sheriff Champagne.

## V.    Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) (Rec. Doc. No. 12)** filed by defendants Lieutenant Norvel Orazio and Sheriff Greg Champagne, in his official capacity as St. Charles Parish Sheriff, be **GRANTED in part** and **DENIED in part** as follows:

**IT IS RECOMMENDED** that the defendants' motion be **GRANTED in part** as to Lopez-Lopez's 42 U.S.C. § 1983 claims against Sheriff Champagne in his official capacity and these claims dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS RECOMMENDED** that the defendants' motion be **DENIED in part** as to Lopez-Lopez's § 1983 failure to protect claim against Lieutenant Orazio.

**IT IS RECOMMENDED** that the defendants' motion be **DENIED in part** as to Lopez-Lopez's state law claims of negligence under La. Civ. Code art. 2315 against Lieutenant Orazio and *respondeat superior* against Sheriff Champagne in his official capacity.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[9]

New Orleans, Louisiana, this ___20th___ day of April, 2020.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[9]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.