## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DELIO LOPEZ-LOPEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9308** |
| **NORVEL ORAZIO, ET AL.** | **SECTION "T"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 27)** filed by the defendants, Lieutenant Norvel Orazio and St. Charles Parish Greg Champagne, seeking dismissal of plaintiff Delio Lopez-Lopez's remaining claims for failure to exhaust administrative remedies. Lopez-Lopez has not filed an opposition. The motion and entire case were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, the Court has determined that the matter can be disposed of without an evidentiary hearing.

## I.    Factual and Procedural Background

Lopez-Lopez is a convicted federal inmate incarcerated in Reeves County Detention Center-III in Pecos, Texas.[1] His complaint under 42 U.S.C. § 1983 and state tort law theories of *respondeat superior* and negligence under La. Civ. Code art. 2315 was filed with counsel against the defendants, Lieutenant Orazio in his individual capacity and Sheriff Champagne in his official capacity.[2] Lopez-Lopez is now proceeding *pro se*.

---

[1]Rec. Doc. No. 16.

[2]The Court finds nothing in the complaint to suggest that Lieutenant Orazio was sued outside of his individual capacity. The counsel-filed complaint is not to be broadly construed.

Lopez-Lopez alleges that, in early April of 2018, he was housed in the Nelson Coleman Correctional Center ("NCCC") in St. Charles Parish while awaiting sentencing on his federal conviction.[3]  He claims he was housed with federal pretrial detainees including Armstead Kieffer and Lance Stovall.  At some point, Keiffer told Lopez-Lopez about his role in the armed robbery of an armored car and shooting death of a security guard for which Keiffer was awaiting trial. Sometime after this, inmates associated with Kieffer, including Stovall, began calling Lopez-Lopez "a rat" and denied him access to the telephones on the tier.  Lopez-Lopez alleges that he began to fear for his safety and requested to see classifications officers in the NCCC Records Department to be placed in protective custody.  He received no response to the request.

When he received no response, he sent a request to speak with Lieutenant Orazio, who he alleges was in charge of the NCCC Special Investigations Unit and responsible for addressing violence and potential violence in the jail.  He claims that he did not include details of his concerns in his request because of Sheriff Champagne's unsecure communications policy at the jail. He claims that responses to inmates' written correspondence to staff were not delivered directly to the complaining inmate.  Instead, at 8:00 a.m. daily, the tier deputy would place all of the unsealed responses on the table in the day room where they could be read by any inmate if not immediately picked up.  Because of this, Lopez-Lopez did not include details of his fear and safety concerns in his requests to the Records Department or Lieutenant Orazio.

Lopez-Lopez further alleges that he received no response to his requests to speak with Orazio.  He claims that, one day during medication distribution, he handed a deputy a note addressed to Lieutenant Orazio indicating he had information to provide.  Lopez-Lopez claims his

---

[3] Rec. Doc. No. 1.

request was granted and he directly with Orazio and asked to be moved to protective custody. Plaintiff claims that he described for Orazio the activities of the other inmates and the implicit threats he was receiving from specific inmates including Stovall. Plaintiff claims that, rather than move him, Lieutenant Orazio asked him to act as his informant on the tier, seeking information about gang activity and drug dealing.

Plaintiff alleges that after this conversation, on April 11, 2018 at around 2:30 p.m., as he stood in the doorway of cell D4-708, Stovall suddenly and without provocation punched him twice in the back of the head. After a struggle, Lopez-Lopez was able to get to his cell and call for help via the intercom system. As a result of the attack by Stovall, Lopez-Lopez suffered severe damage to his right eye that left him permanently blind in that eye and with permanent facial disfigurement.

Lopez-Lopez argues that the attack and his injuries resulted from Lieutenant Orazio's and Sheriff Champagne's violations of 8th and 14th Amendment protections against cruel and unusual punishment. Specifically, he claims the violations resulted from Orazio's deliberate indifference to a serious risk of harm and Sheriff Champagne (in his official capacity) had a policy, practice or custom that did not allow inmates to securely communicate safety concerns to jail officials for fear that their written complaints would be accessible to other inmates and increase their danger. He also asserts that Orazio's actions amounted to negligence under La. Civ. Code art. 2315, and Sheriff Champagne is liable under Louisiana law under a theory of *respondeat superior*. Lopez-Lopez seeks monetary compensation for his damages.

On May 7, 2020, the Court adopted the undersigned's prior Report and Recommendation addressing the defendants' Motion to Dismiss (Rec. Doc. No. 12). The Court granted the motion in part to dismiss Lopez-Lopez's § 1983 claims against Sheriff Champagne in his official capacity. The Court also denied the motion in part and retained Lopez-Lopez's § 1983 claims  failure to

protect claim against Lieutenant Orazio and his state law claims against Orazio for negligence under La. Civ. Code art. 2315 and the *respondeat superior* claims against Sheriff Champagne in his official capacity.[4]

In the prior motion, the defendants asserted the defense of failure to exhaust administrative remedies. The defense was rejected as unsupported by the pleadings, and defendants have filed this Motion for Summary Judgment to re-urge the defense with supporting documentation.

## II.     Standards of Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or

---

[4] The District Judge's Order adopting the Report and Recommendation does not specifically address the state law *respondeat superior* claim against Sheriff Champagne, which was part of the undersigned's Report and Recommendation clearly adopted in whole by the District Judge. The defendants proceed as if the claim is still pending before the Court. Because the District Judge's Order did not dismiss the state law *respondeat superior* claim, the Court will also proceed as if the claim is still pending.

other materials.  Fed. R. Civ. P. 56(c).  Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits.  *Anderson*, 477 U.S. at 252.  The moving party's burden is therefore "understandably heavier" where that party carries the trial burden of proof.  *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact.  *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24).  All justifiable inferences are to be drawn in the non-moving party's favor.  *Anderson*, 477 U.S. at 255; *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment."  *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment).  Although the Court may not evaluate the credibility or weight of evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists to find for the non-moving party.  *Anderson*, 477 U.S. at 254; *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

## III.    Discussion

### A.    Defendants' Motion for Summary Judgment (Rec. Doc. No. 27)

The defendants, Lieutenant Orazio and Sheriff Champagne, seek summary judgment dismissing Lopez-Lopez's remaining federal and state law claims against them because he failed

to exhaust administrative remedies at the prison as required under 42 U.S.C. § 1997e(a).[5] Defendants argue that Lopez-Lopez was aware of and failed to utilize the prison's administrative grievance procedure as to any claims against Orazio. They further argue that Lopez-Lopez also did not utilize other available procedures, including the internal Crime Tip Hotline or emergency grievance process, to report his concerns about his safety prior to the attack by Stovall.

Defendants support the motion with an affidavit and documentation from the Assistant Warden, Captain Jessica Trosclair, in which she attests to the administrative remedies available and known to all inmates, including Lopez-Lopez, and provides to the best of her knowledge a review of Lopez-Lopez's use, or failure to use, the prison administrative systems.[6] Captain Trosclair did *not* outline or explain the steps involved in the administrative remedy procedure with which the defendants claim Lopez-Lopez should have complied. Instead, she referenced an attached copy of Lopez-Lopez's Inmate Orientation Form signed September 26, 2017, in which he acknowledged that the Administrative Remedy Procedure was explained to him.[7] She also provided a copy of the prison's Offender Handbook, also provided to Lopez-Lopez in English and Spanish when he arrived at the prison, without any explanation of the actual steps and requirements of the administrative grievance process.[8]

In her review of the prison records, Captain Trosclair did not locate any Request Forms, ARP Forms, or Emergency Grievance forms from Lopez-Lopez related to any safety concerns of

---

[5]The Court rejected the defendants' similar exhaustion arguments urged in the Motion to Dismiss (Rec. Doc. No. 12), because they were premature in that procedural setting and not properly supported. *See* Rec. Doc. No. 25.

[6]Rec. Doc. No. 27-2, pp. 1-4.

[7]Rec. Doc. No. 27-2, p. 6.

[8]Rec. Doc. No. 27-2, pp. 7-37, pp. 38-67.

danger at the hands of other inmates. She provided copies of the forms he submitted, none of which relate to the claims now before the Court.

###    B.    Failure to Exhaust

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court has held that the exhaustion requirement is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 & 532 (2002). This also includes "failure to protect" claims that those presently before the Court. *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002) ("*Porter* squarely precludes [a] contention that [a] failure-to-protect claim is outside § 1997e(a)'s scope."); *see also Crowder v. Univ. of Tex. Medical Branch's Unknown Nurse*, 267 F. App'x 319 (5th Cir. 2008).

The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "Quibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth*." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). The exhaustion of administrative procedures related to any aspect of prison life must be completed prior to the filing of the federal § 1983 complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (footnote omitted).

Exhaustion must fully comply with applicable prison procedural rules and deadlines; substantial compliance with administrative procedures is insufficient. *Guy v. LeBlanc*, No. 13-

2792 c/w 13-5033, 2015 WL 65303 at *9 (E.D. La. Jan. 5, 2015) (citing *Wright*, 260 F.3d at 358). As the United States Fifth Circuit has explained: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998) (quoting *Webster's New Int'l Dictionary* 796 (3rd ed. 1981)).  Therefore, administrative remedies are not exhausted unless a prisoner pursued his grievance through the conclusion of all steps of the administrative remedy procedure.  *Wright*, 260 F.3d at 358; *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines); *see also Hemphill v. Inglese*, 359 F. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps.").  This is true even if the procedure's provision regarding the availability of further review is phrased in discretionary rather than mandatory terms.  *Ates v. St. Tammany Parish*, No. 13-5732, 2014 WL 1457777, at *3 n.10 (E.D. La. Apr. 15, 2014).  The federal court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted).

However, it also is well settled that "[w]ithout knowing what the applicable grievance procedures say, it's impossible to determine whether [plaintiff] exhausted them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (citing *Scott v. Poret*, 548 F. App'x 160, 160 (5th Cir. 2013)).  Despite quoting this very language in their brief,[9] neither the defendants' nor Captain

---

[9]Rec. Doc. No. 27-1, p.7.

Trosclair's actually identified the steps required for the NCCC administrative grievance processes to be completed. Instead, the Offender Handbook was simply referenced and attached to Captain Trosclair's affidavit. While the Court certainly has no obligation to search for support in the defendants' exhibits, judicial economy compels a review of the Offender Handbook, which provides the following relevant information:[10]

### Request Forms

Offender Request Forms are used to communicate with Correctional Staff for you to request services and programs. Request forms and applications are available in each housing pod through the Laundry Deputy during the day and the Pod Deputy at night. If you need assistance using an Offender Request Form or need information on available services, ask your Pod Deputy for assistance. Offender Request Forms must be submitted with the pickup of outgoing mail, so it can be distributed to the area of concern.

Request Forms should be submitted before filing an ARP for any relief.

### Administrative Remedy Procedure (ARP)

An ARP (Grievance) is an issue personally affecting an offender in the areas of health, welfare, or services of the facility that is within the power of facility personnel to correct. Personal disputes between you and a Deputy are not considered grounds for a grievance. In order to bring the problem to the attention of personnel, you must submit an ARP form, which is available from your Pod Deputy. When submitting a grievance, you must provide as complete information as possible regarding the problem and your housing assignment. The grievance will be submitted to Records, who will direct it to the first respondent for review.

### Emergency Grievances

An Emergency Grievance may be filed if you would be subject to substantial risk, personal injury or other harm if the problem is not addressed almost immediately.

An Emergency Grievance is given to your Pod Deputy, who immediately forwards it to the Shift Supervisor for immediate action.

Abusing the Emergency Grievance procedure will result in disciplinary action.

Based on the foregoing, the Offender Handbook reflects that there are at least two steps in the regular administrative process and one in the emergency grievance process. In the regular

---

[10]Rec. Doc. No. 27-2, pp. 26-27.

process, an inmate is first to submit a Request Form *before* filing an ARP form. As quoted above, "Requests Forms *should* be submitted before filing an ARP for any relief."[11] (emphasis added) This language is not definitive but suggests the request must first be made. Second, an inmate must give a completed ARP form to the Pod Deputy, and that form is routed to "Records" and then to the "first respondent" for review. There is no explanation of what happens next or if perhaps there is a "second respondent" or other appeal process. The alternative "Emergency Grievances" process, when immediate needs must be met, apparently has one step. The form is to be given to a Pod Deputy who immediately will give it to the Shift Supervisor.

Although Lopez-Lopez's complaint alleges that he submitted written requests for classification changes to the Records Department and Lieutenant Orazio, no such documentation was located by Captain Trosclair in the prison records nor were any submitted to the court by Lopez-Lopez. He also claims that he sent a note (not an official request or grievance form) directly to Lieutenant Orazio, but this note, as he concedes, was outside of the normal or required steps of the jail's ARP procedures. There also is no indication that he filed any request or grievance complaint regarding his concerns about the "lack of privacy" in the written communication system at the prison. Based on the record, and the unopposed motion, Lopez-Lopez failed properly to utilize and exhaust the Request Forms, ARP forms, or Emergency Grievance procedures at the jail before filing this suit.

When an inmate files an *in forma pauperis* complaint in federal court that contains claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but *with* prejudice for the purpose of proceeding *in forma pauperis*

---

[11]*Id.*

under 28 U.S.C. § 1915 when he seeks to refile the claims after exhaustion.  *See Underwood*, 151 F.3d at 296; *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998); *Walcott v. Crabtree*, No. 13-71, 2013 WL 5236643, at *4 n.17 (E.D. La. Sep. 13, 2013); *Fitch v. La. Dept. of Pub. Safety & Corrs.*, No. 08-1126, 2009 WL 1076749, at *3 (W.D. La. Apr. 20, 2009).  That is the disposition recommended for Lopez-Lopez's remaining § 1983 claims.

>       **C.**       **State Law Claims**

Lopez-Lopez also asserted state law claims of negligence and *respondeat superior* against the defendants.  The exhaustion requirement under the PLRA at Section 1997e(a), however, is directed only to "prison conditions under *section 1983* of this title, or any other *Federal* law," (emphasis added) and does not apply to Lopez-Lopez's remaining state law claims of negligence and *respondeat superior*.  Defendants' Motion for Summary Judgment did not address grounds for dismissal of those claims for failure to exhaust, or any other ground, under state law.

Nevertheless, dismissal of Lopez-Lopez's remaining federal claims is imminent based on the foregoing recommendation.  Under the relevant jurisprudence, the general rule is that district courts should decline to exercise jurisdiction over pendent state law claims when all federal claims have been disposed of prior to trial.  *Robinson v. Gusman*, No. 06-3760, 2007 WL 1029425 at *5 (E.D. La. Mar.29, 2007) (Engelhardt, J); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).  The Court therefore recommends that jurisdiction be declined over Lopez-Lopez's supplemental state law claims and those claims dismissed without prejudice.

**IV.**       **Recommendation**

It is therefore **RECOMMENDED** that the defendants' **Motion for Summary Judgment (Rec. Doc. No. 27)** be **GRANTED** and Lopez-Lopez's remaining 42 U.S.C. § 1983 claims of

failure to protect against Lieutenant Orazio be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust under 42 U.S.C. § 1997e and **WITH PREJUDICE** for purposes of pauper status under 28 U.S.C. § 1915.

It is further **RECOMMENDED** that Lopez-Lopez's state law negligence and *respondeat superior* claims against defendants Sheriff Champagne and Lieutenant Orazio be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[12]

New Orleans, Louisiana, this _____17th_____ day of July, 2020.


_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[12]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.